Good morning, Your Honor. May it please the Court, my name is Kevin Brooks. And I am here representing the appellant, Bridget McKeary. And if I may indulge the Court, I just would like to say my firm inherited this case two weeks ago when the lawyer who'd been putting his heart and soul into this, Clint Hodges, unfortunately passed away. So his family's here to honor him, and I just wanted to point that out. Thank you very much. You got probably a little preview of what some of the issues are by hearing the last case. So you may proceed. It was a nice crash course right there. But I'd like to reserve five minutes for rebuttal as well. This case, I think, is actually an easy case for a couple of reasons. One, the district court here actually literally ruled that the federal government can't be sued for negligence, and that it adopted the government's conclusions of law in its order. And as we all know, that's flat wrong. 28 U.S.C. 1346B1 specifically says that in enacting the Federal Tort Claims Act, the government was waiving claims for personal injury caused by the negligence of government employees. And that's what we have here. This is a case where the government, in 1984, constructed a cable system on the half dome. And I hope the court's had a chance to look at pictures of this. There's pictures, excerpts of record, page 100. And the government, in its brief, in the FLE's brief, puts in a lot of facts that actually support our case. And some of the facts it puts in are that the government has already decided to maintain this cable system. They know that there are 40,000 people per season who use this. The season is four months. That's 10,000 people a month. That's 300 people a day are using this cable system. They have 15, I think they have, they said they have 15% of the park rangers in this area. They submitted a fact to the district court on page 42 of the record that at least one of the rangers who patrolled the half dome cables did so on average of once or twice a week. Counsel, let's focus on the maintenance question, because I'm trying to get the focus of the argument. It seems to me that the attack here is a proper maintenance attack. It also seems that, I mean, there's some reference to standards of looking at things at least once a year. It seems to me this is looked at at least once a year, maybe twice a year. So I don't see that that's the problem. Is your claim that the government agents are required to inspect more often, perhaps on a daily basis? Or is it that the rules require them to do it? Or are you claiming they knew that this thing was broken and didn't do anything about it? I'm trying to understand what the claim is, because a lot of our cases deal with they knew it was a problem. The fire ring, they knew it was a problem. The meat department, they knew it was a problem and didn't do anything about it. The path to the cliff case, they knew it was a problem and didn't do anything about it. My question is, what precisely is the claim? That they knew this was not, that this cap wasn't on properly? Or that they should inspect it every day? Or what, precisely? The underlying negligence claim is that they did not maintain the half-dome cables, in this instance, in a safe manner. Well, I understand that's a general thing. Obviously, it wasn't safe, because it became unsafe. But let's say it maybe became unsafe. That is just a conclusion. The question is, what were they supposed to do that you're saying, what non-discretionary duty did they violate in not discovering that it was unsafe, or in knowing it was unsafe? Well, Your Honor, as counsel for the government, I just so eloquently argued, this is garden variety negligence where someone failed to tighten a bolt. I mean, that's what happened here. There was not a cap on the pole. How do we know it was a failure to tighten it when it was first put up, which I take it was sometime before this accident occurred, or the bolt came loose with operations? You know, we know that mechanical things come undone amazingly. All of a sudden, the screw falls out of something. So how do we know that that is something the government did wrong? Well, first, I would say that that's the underlying negligence claim that we should be given a chance to prove at the trial court. No, no, no, the court, you're saying that they, you're saying, if I understand it correctly, that they had a non-discretionary duty to discover the problem. Is that what you're saying? All I'm saying, they were engaged in the maintenance of this half-dome cable, knowing that 300 people a day were using it, and they did not exercise due care, that's our claim, in discovering the problem and repairing the problem. But what would due care be here? That's really, in other words, should the, well, if we had a jury, but we don't. If a judge were writing an opinion, okay, saying they had a duty to, you know, maintain this and check it out, on what basis could he say that they had to do something more than what they were doing, which was, as I gather, at the beginning of the season and at the end of the season? Why would he write that? I think the judge, the district court judge could write, or the appellate court judge could write, that the government, in this instance, needed to do what a private landowner would do if they had an attraction. Well, if you were a private landowner and you had an attraction where people could climb up a hill in your house and 300 people a day were doing it, I would suggest that you check it every day because someone's going to sue you if the thing's not working properly. And here immunity, my view is, and our position is, the government has waived immunity for these precise types of claims where the government is essentially acting as a private landowner. That just cannot be the rule, as boldly stated. Or let me put it a different way, as Judge McKeown was asking. What's your best case that says that's true? I would say the Oberson case, which the government did not address in its brief. The Oberson, O-B-E-R-S-O-N, Ninth Circuit case. And that basically stands for the principle that once the government starts to act, they've got to do so reasonably. Also, the Lighthouse case, which is the Indian towing case. In that case, the government built a lighthouse and they did not maintain it properly and ships had started to rely on the lighthouse. It was then not maintained properly and a ship wrecked. And the claim there was if you're going to act, you have to act reasonably. Let me just give an analogy. You know, the difficulty that I keep coming up against, even listening to you argue this, is that you make it sound like it's Safeway. The government's Safeway and there was a spill in the aisle and they didn't find it. And they should have found it and they didn't. And therefore, Safeway is liable for slip and fall, for example. Sounds like that. But even with Safeway, there's got to be some sort of indication that they knew or should have known that there was a spill in the aisle. When you come to the maintenance standards, it seems to me, what you seem to be saying is, once the government put up the cable, any time it came loose, it's the government's problem. Say they were inspecting it every morning and in the morning it was peachy keen and in the afternoon it came loose. You would say, if I hear you right, that's the government's problem. Is that right? No, Your Honor. No discretionary function. No. Well, what I would say is that is an issue that would then need to be decided by the trial court. Knew or should have known. That's not for this court. No, the question is, though, your argument, I think, has to be, they had a non-discretionary duty to inspect more often. It ain't like a roadway that's sloughing off over years. It's not like mold that's growing for three years. They had a non-discretionary duty to inspect more often. How often? Reasonably, as a private person would do. Let me give an analogy. Let's say the government made a policy decision to put a gondola on the half dome, to take people up and down in a gondola, a mechanized gondola that hung on a cable. And let's say a gondola wasn't maintained properly and it fell down and killed everyone. Certainly, I think we would all be in agreement that, hey, if the government's going to put a man-made gondola on the half dome, they've got to maintain it. That's what they did here. They put a man-made cable system. I think the difference, in this case, in your Safeway example. Let me step back, then, because what we have to try to figure out is, what would be the rule arising out of this case? And if I hear your argument correctly, here's what I think would be the rule. The rule would be, every time the government puts up any kind of facility, device, or otherwise, then it basically accepts all liability of an ordinary landowner or operator. Would that basically – if it does not maintain it and it causes an accident, would that be the rule? I think this Court could draft the rule even more narrowly, that if the government puts up a man-made facility of some sort that invites the public's participation, for example, puts up a metal view station at the Grand Canyon with the railing, that when you go to the Grand Canyon with your family, you see a little metal view station or at any other national park. You feel safe to walk out there with your family. If you walk out there and it turns out they hadn't maintained it properly and the thing falls into the Grand Canyon, certainly I think – It's like a broader – I mean, I don't think we can write a Grand Canyon rule. So what would be – again, I'm trying to go back to, because we can talk in the abstract, but in the end, we have to come up with a formula that's consistent with our case law and that would provide, you know, a clear foundation. So maybe you could just restate again what you think that formulation would be. I think the formulation would be that if the government constructs a man-made facility and invites the public to use it and has full knowledge that the public is using it, it needs to exercise the ordinary and reasonable care that a private landowner or private Six Flags over North America operator would engage in. Having said that, you would say, I believe that as soon as it's put up, this facility, the discretionary function test is out the window and what we're deciding is this on a straight, pure negligence basis. Is that correct? Not in all cases. I think – No, I'm trying to take your example. If you want to put a caveat, then it should have been in your example. Your example was, you said, the government puts a facility and invites the public to use it, then the government has to maintain it, i.e., if anything goes wrong, the government's responsible. Well, I don't think that last part is what I don't agree with. It's not a strict liability. They have to maintain it. Yes. Now, we're back to go where you said to me a moment ago, well, that's just a negligence question. We're back to go. They have to maintain the cables, okay? How often do they have to inspect them to make sure they're maintained properly, on your view? Well, I'm not an expert witness in maintenance of facilities, so I think that would be a jury question. But that's the case before us, not your personal view. On the evidence before us, how often should they have been inspecting it non-discretionarily? Certainly more than once at the beginning of the season and once at the end of the season, when they know that 300 people per day are using this. Why? They've never had this problem. They had this problem once 20 years ago, they say. In fact, they didn't even say it was that problem. They've never had this problem before. Hypothetically, there's no evidence there's ever been such an incident before. So why do they have to do it more than what they've always done, which has been perfectly satisfactory for 40 years or whatever it is? Well, isn't that the case in every negligence claim? Sometimes there's a lapse. Here, there was a government employee lapse of attention. Apparently, they were doing something better in those prior years if they weren't having any accidents. Our claim would be here, there was a lapse. It wasn't someone making a discretionary decision. It was like a postal service driver who has a lapse of attention and rears in somebody. There was no decision. How do you know there was a lapse as opposed to, you know, during the period of time, you know, something hit it or, you know, knocked it out of place? How do you know there was a lapse? Well, that is our claim. And we hope to put on witness testimony that would support that claim. Who would be the witness to this alleged lapse? Other people who were on the cable system. We would try to prove that perhaps the cable had been separated for a lengthy period of time, long enough that the government should have noticed it. Same with the missing planks, that it was long enough that they had been missing that someone from the government should have repaired it. The government stated in its brief and in the record it created that if they were informed of a problem, they would actually fix it. So it's not like there's a policy decision here not to fix these cables. They were engaging in it. And that's our simple claim. If you're going to engage in something, if the government is, they have to do it reasonably. This was done on, this was on a factual record, correct? The ruling below? The ruling below. Oh, yes. Well, the, there was no evidentiary hearing, so. And that's, it was based on facts submitted to the court, correct? That's correct, by the, by the government that the district court adopted. Well, my question is, you said, well, there might be other people who went up and down and saw the problem. Any evidence of that? Again, I, I would like to address that after when I speak to the people who know the case a little better than me. I've, again, I hate, I don't want to fall back on that, but it's two weeks that I've had the case. Reserves. Yeah. Okay. Thank, thank you. Good morning, Your Honor. Julie Zatz on behalf of the United States. Your Honor, I'd like to try to answer the questions that you pose within the context of the law that this Court has developed. I think the difficulties that plaintiff is having in this case is that he wishes to construe the implementation of any government policy as no longer privy to the protections of the discretionary function exception, but rather as accessible by means of the standard of negligence. But as this Court well knows, the jurisdictional question has to be answered first, and that question must be considered within the context of the guidelines provided by this Court and by the United States Supreme Court. Now, I don't think that, but I'd be pleased to answer questions if the Court has it. There is an issue as to whether or not there was a mandatory established safety policy in effect here that has some bearing on this case. I think that that matter has been briefed and discussed, and this Court has repeatedly found that the National Park Service manuals at issue in the earlier case convey the kinds of discretion and general duty to promote safety that doesn't rise to the level of a Berkovitz mandate. So really, I think the question becomes whether or not the actions undertaken by the National Park Service, that they don't have to be factors that were actually considered, but rather that the Court could find a susceptibility that explains what went on in this case. This is not a case about a failure to implement properly or at all a safety policy. That case was ARA Leisure, where the Court found that the Park Service had a certain requirement to maintain a road at a certain dimension, and they simply failed to do so. Or, Your Honor, this is not the Faber case, which was, in fact, a Forest Service case, a distinction that becomes important because I think the mission of the Park Service, as Council earlier discussed, is different and to some degree conflicted and by its very nature requires a balancing of concerns and considerations. Unlike Faber, there was no, there were no prior accidents, there was no finding that, I mean, there was no prior conclusion on the safety plan, that the public needed to be warned of certain things in a certain way and that signs needed to be posted. All that we have here is the Park Service mission to try to promote visitor access and visitor which I think would be consistent with Park Service enabling legislation which describes such things as wondrous curiosity. Just to ask the logic of your position, what if there was an allegation and maybe some evidence that, in fact, someone had seen this particular chain or whatever it is and said that there's a problem with it and some prior climber and had told somebody in the Park Service and then they did nothing? Under your analysis of their discretionary, they would not have to respond, right? Well, I think that that's a very factually based question and not one presented here. But I think that if there had been a sighting of a problem and a warning or an informed mention of it to an appropriate Park Service employee and they had explicitly decided it's not important, you know, I don't care. No, they didn't decide that they weren't going to do, they just forgot about it, they made a mistake. Well, if their reason for forgetting was there were only 50 to 60 of them and they're 1,200 square miles of trail and they've got problems with bears and they've got problems with people falling into, you know, into waterfalls, not problems with tippy rocks. I don't think that we need to be concerned about those types of problems. Then I think that's what we'd be talking about. But, Your Honor, and this gets to Judge Fernandez's point at the end of counsel's argument, we have full discovery in this case. Plaintiff took maximum number of depositions allowed and it went on for quite some time. There just is no record whatsoever on that point. And although prior counsel didn't wish to make this a litmus test, I think that it does have evidentiary value that not a single, but a single prior accident in 20 years occurred with that level of visitation. Now, as the government briefed, there were a handful of examples of people who got up there and practically had heart failure or were scared to death, as frankly I would be, at that height. But this is not what we're talking about here. This is not a supermarket where somebody spilled something on the floor and the janitor didn't come out and Blackburn is not a case of a private landowner who has a swimming pool and the one end of it is too shallow and someone dives in and unfortunately becomes a quadriplegic. This is the National Park Service who is charged with the maintenance of hundreds of thousands of miles of trails and who have this conflicting at times goal of promoting visitor access within the context of trying to promote as much visitor safety as possible. But if, you know, there's more than one way to scale Half Dome. One is to just go up and be a rock climber without any assist. But when the government puts up what is basically a cable highway so that you don't need to use any other kind of normal rock climbing paraphernalia. But once the government puts it up in what is known as a risky proposition, then doesn't the government have an obligation to maintain it in a reasonable fashion? Your Honor, I don't think there's any evidence in the record that this is known to be a risky proposition, nor do I think there's any evidence of the record of a failure on the part of the Park Service to maintain the cable system. And it's not exactly a cable highway. It's a system of poles and cable ropes and planks that are kind of on the rock that are placed at different places each year because the rock changes. It avalanches and rains. But it is, you know, it's they haven't put a gondola up there, but they've put up there the physical implements that basically make it so that you can walk up the rock, in effect. The placement of whatever is up there is clearly done in furtherance of the goal of visitor access. To make it possible for more people to enjoy have to. But... So the decision of whether to do it or not, obviously, was a policy judgment of access, more access, different access than one might have in a typical rock climbing situation. But then the question becomes, once there, does the government incur garden variety maintenance obligations that are not really susceptible to policy analysis? No, ma'am, I don't think that they do. Why not? Because, again, going back to the goals that are the mission of the Park Service, access is one, safety is another. But also this Court has approved government decisions as to maintenance being made in the context of limited resources or present, of human resources, or preservation of natural resources. There is no permanent escalator, gondola, or staircase up there, because to do so would be inconsistent, I think, with the goal of minimizing manmade intrusions. The maintenance schedule adopted, has been adopted because of the belief that sending a crew to the park crew up to spend a good deal of time when the system goes up, and when the system comes down, and to make the repairs possible at the site and carry back down what needs to be carried back down and returned the next season, is done with an eye towards how much maintenance is required on a system of this type and who is available to do it. And I would point out, Your Honor, that at page 27 of the opening brief, it is explicitly conceded that the manner in how to perform inspections, maintenance, and repair is discretionary. What plaintiffs are complaining about here is that in the course of performing a discretionary act, they allege, negligence occurred, and their evidence of that is because somebody was badly hurt, and that is regrettable. But that's not the standard, because as we know, if the government has the discretion to perform an act, it has the discretion to do it incorrectly, or to fail to do it at all. That's not this case. One of the best arguments they have seems to be the lighthouse case. So the government puts up a lighthouse, and it's got this light that goes around, and it decides, we're going to look at the light once a year. And it goes along like this for ten years. And then it burns out in the middle of a year. Is the government responsible for that? Is that a discretionary function question? Or once they put up the lighthouse with this light, they jolly well better look at it to make sure the light's on. Well, Your Honor, that case, as you know, was never posed, argued, or analyzed as a discretionary function case. We don't know anything about whether there was a mandate that existed or whether the agency had some policy reasons for choosing to maintain it in the way that it did. And so I would submit that Indian towing is not a relevant case on the issue of whether this Court has jurisdiction under the discretionary function exception. Indian towing might be a relevant case if the Court were to find that, in fact, the district court has jurisdiction, that the exception doesn't apply, and we go to trial on it. But we don't go to trial where the United States exercises its discretion property. And what plaintiff is seeking here is to have this Court construe whatever happened to that little cap that caused, you know, one person in 20 years, two people, I guess, this is the second person in 20 years, to fall. No, I think this, in a sort of a backhanded way, the Supreme Court kind of acknowledged this as in wishing that there was like a footnote that ties this up to the Berkowitz case, and so in a backhanded way, the Supreme Court kind of said, well, it is a discretionary function case, or at least it alluded to that. So I'm not sure it's an argument to just say it's an outlier or it's not a discretionary function case, is it? Well, I hope that that's an argument that can be made, because I think it's a good one. But in mentioning Berkowitz, and to some degree Indian Towing, those cases factually raise issues that carve out exceptions to the exception that this Court is still wrestling with, namely actions that raise issues of scientific, technical, or professional judgment. That's not going on here. There is a crew of essentially experienced climbers who go up there and make decisions about how to put this system up, who acknowledge that ordinary wear and tear needs to be examined twice a year to have somebody up there, I mean, to state it extremely, on a daily basis, in a little, I guess, ranger house, running up and down, checking to make sure everything is fitted, when we know from the record that in order to put them up or take them down, the entire, the public has to be stopped. While this goes on, it's preposterous. This is not an amusement park attraction. This is a natural setting, and it is one of the wonders of the national park system. And if I may point out on that theme, plaintiffs in the brief also tried to draw attention to features that might be hazardous. Well, you know, Blackburn involved a bridge that was built by the park service that someone dove off of. And if you want to narrow your focus to make it so that it's completely devoid of context, Daylight, one of the seminal Supreme Court cases, involved a failure to load a vehicle, in this case a ship, properly. We can narrow the focus to the point of absurdity when I think the obligation here is to ask the tough questions that this Court has asked, whether there's a mandatory established safety policy that we need to work against, and there isn't here, and whether or not the choice is made by the park service and the way in which it carried out its maintenance is susceptible to policy analysis. And what that means, in part, as the Supreme Court has said, is that the actions undertaken have to be consistent with the mission of the park service. Park service is not the forest service. The park service has these obligations and goals, and most of them are focused on visitor access versus visitor safety without defiling nature. The forest service, as we know, has many, a much broader spectrum of activity. And you've got, you know, spotted owl people working against logging people. It's not the same kind of visitor education, emphasis on visitor comfort, or educating the public, as it does in its many manuals, that it must, the public must assume the risk in the wilderness that might not exist in their homes or their backyards. So, I mean, I hope that answers the question that you were asking, Your Honor. There were a couple other points that I wanted to make, and that was, there is no sufficiency test that this Court or the Supreme Court has ever announced with respect to which policy factors are more or less important. So we're not in the position of saying, well, you know, VARIG involves certifying airlines, and the parks just involve a little cap on a mountain. That's not the way that the courts have looked at the issue presented. The courts have examined the agency's purposes and seen whether or not the allegations of negligence in this case withstand suit because the actions were undertaken in furtherance of some discretion conveyed upon the agency. Were it otherwise, were it as plaintiff seeks to present it, and the government would have all kinds of discretion to decide what to do, but then no matter what it did, if it failed, if someone was injured, they would be liable. That, regardless of what counsel may call it, is strict liability for the, for a failed implementation. It is a waiver of sovereign immunity imposed by the courts, which with all due respect, the courts cannot impose because the waiver is limited. And finally, if this Court gets around to trying to determine whether a cap at the top of a mountain was put on properly or not put on properly, I think it involves the type of judicial second-guessing that is, with all due respect, I think this Court has many better things to do than to worry about why caps fall off or they don't fall off. Are there any questions that I've failed to answer? No, I think you've answered your questions. I said it needs fixing. Okay. Thank you very much, Your Honor. Thank you. May it please the Court. Judge Fernandez, I do agree with you that the Indian towing case and Judge McKeown, that the Indian towing case does apply here and that the Supreme Court has recognized that it is at least related to the discretionary function exception. I would also draw the Court's attention to the Huber case, which is a Coast Guard rescuing a boat, and there was language in the case that the Coast Guard doesn't have to rescue all boats, doesn't have the resources to rescue all boats, but if it's going to try to rescue a boat, it's got to do so with ordinary due care. And that's what we say happened here. We are not by any means trying to argue that the national parks have to be completely safe, and we don't want them to be that way. We just think if manmade structures are going to be put in the park, it needs to be done reasonably. If there was a building in the park that was a tourist attraction where visitors could go in, walk around, look at photographs, go upstairs, if the stairs fell through and the National Park Service should have maintained those stairs better, that's garden variety negligence. This just happens to be a staircase up the side of the hill. And Judge Traeger, to answer your question about the record, what I was able to put together in the few minutes I had there was that if you look at the deposition excerpts that were lodged in the excerpts of record and you read them about the lack of due care testified to by the government employees, I think if there were a private party and it was a private party, you would feel that there was an absolute lack of care done here. If you're going to put something up where you know 300 people a day are going to be using it, and you're just basically not going to maintain it except for when you put it up and take it down, I don't think that's good enough. I think that's like an observation point where you know families are going to go walk out on it to enjoy the view. That's why people go up to the top of Half Dome to enjoy the view. Now, the government didn't have to put the cable system there. And if they didn't, that would be a policy decision. And if a climber slid down the rock, I don't think we could be here today. I don't think that's the kind of case we would want to bring. But here they decided to actually not maintain the beauty of the park. They did the opposite. They put a man-made structure on it. And I think that is an important dichotomy that needs to be addressed. That's like building a lighthouse. You've got to keep the cable system running. And if it were a gondola, I think it makes it easier. But analytically they're the same thing, a gondola and this cable system. And unless the Court has any further questions, I would submit. No, I thank both counsel for your arguments. Also particularly thank you for stepping in on short notice here. The case of McCurry v. United States is submitted. Thank you, Your Honor.
judges: Fernandez, McKeown, Trager